No. 21,700.

BELLE P. MOHERMAN, *Appellee*, v. HENRY ANTHONY, *Appellant*.

SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*Transferable Only by Consent—Transferred Without Consent—Measure of Damages.* An oil and gas lease contained a provision that it should be transferable only by the consent of the lessor, and if sold she should receive one-half the consideration. The lessee sold it together with several other leases and a large amount of property for the bulk consideration of $65,000. In a suit by the lessor to recover her share the evidence showed that there was no separate consideration for her lease. The petition contained no allegation of its value, and no competent evidence was offered to prove its value. *Held*:

(*a*) The identity of plaintiff's property not having been lost or destroyed, the doctrine of confusion of goods has no application.

(*b*) Plaintiff's measure of damages is her share of the value of the lease at the time of sale.

(*c*) The instructions on the measure of damages, and the character of proof from which plaintiff could establish her damages, are erroneous.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed October 12, 1918. Reversed.

*W. B. Pleasant,* of Ottawa, for the appellant.
*F. A. Waddle,* of Ottawa, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff made to the defendant an oil and gas lease on 80 acres of land owned by her in Franklin county. The lease, which was dated June 20, 1912, was to remain in force for the term of five years and as long thereafter as oil or gas should be produced. The defendant agreed to give a bonus of $50 yearly for each oil well producing five or more barrels per day. The lease contained this provision:

"This lease is transferable only by consent of first party. If sold, first party to receive one-half of the consideration lease is sold for."

The defendant drilled two dry holes, one in the northwest and the other in the southwest corner of the tract, and later drilled one well near the southeast corner which produced a

Moherman v. Anthony.

small amount of oil and gas. On January 20, 1916, he sold and transferred the lease to William Renker, together with a number of other leases and considerable other property. The plaintiff brought suit, alleging that without her consent he had sold the lease and had failed and refused to pay her any part of the consideration, which she alleged to be $6,000. She alleged that the oil well on the premises produces, or would produce if properly operated, more than five barrels per day. She asked judgment for the bonus on this well and for one-half of the consideration received in the sale of the lease.

The answer was a general denial with certain counterclaims to which further reference is not necessary. The reply was a general denial. The jury returned a verdict in plaintiff's favor in the sum of $1,500. From the judgment defendant appeals.

The plaintiff was not able to produce any evidence to show what part of the consideration received by the defendant in the sale was for the lease in question, nor was the defendant able to do so. The defendant had been engaged in the oil and gas business, and owned leases on several tracts of land in the northern part of Franklin county, from which he supplied gas to the public. The property embraced 52 miles of gas lines, the oil in the tanks and pipe lines, tools and fixtures, material on the leases, contracts with consumers, records and books of account, and all franchises and rights pertaining to the business, together with the good will of the business. The gas field included in the sale covered 800 acres, with sufficient gas to supply 145 consumers, who were paying from $40 to $50 a year in advance for the service. There was also included the gas and oil rights under 580 acres of land belonging to the defendant. The consideration received for the transfer of all the property was $65,000.

The principal errors complained of relate to the instructions concerning the measure of damages and the character of proof upon which the plaintiff would be entitled to recover. The court told the jury that evidence had been permitted to go in to show the value of the oil lease, and that from this the jury should first determine what defendant "got for his oil lease." After referring to the question of value, the instructions charged that, "having determined that, then Mrs. Moherman's interest should be determined by finding out her proportion of the en-

tire sale of oil leases." The instructions further charged that it was not the value that plaintiff could recover, but that it was from the value that they were to find what the defendant got for his oil leases, and that plaintiff would be entitled to recover one-half of what he received for the sale of her lease. We think the contention of the defendant is correct, and that the instructions were erroneous. In the first place, there was no evidence to disclose a possible basis upon which the plaintiff's proportion of the consideration could be determined, nor any competent evidence to show the value of the other property transferred. If the instructions presented the proper theory for determining the amount of plaintiff's recovery, it would have been necessary for her to prove the value of her own lease, as well as the value of all the other property included in the lump sale, in order to determine her proportion of the consideration. The instructions omit all reference to the value of the business included in the sale, and besides, there was no evidence from which the jury could have determined its value. The court charged that the jury should—

"take first from the total sales of the oil leases as you shall find it to be, the value of any machinery that the evidence shows went into the sale. Then Mrs. Moherman should receive, that is, her lease should be credited with her proportion of the selling price, and her proportion, I think, should be determined by taking the number of producing wells on her lease and comparing them with all the producing wells sold. If there were seventeen producing wells sold, then her lease should be considered as being one-seventeenth (1-17) of the total, and then she should have one-half (½) of that. . . . Take into consideration the number of producing wells; the time the sale was made to Mr. Renker; what Mr. Anthony said of the value of the wells; the value of the leases, and all of the circumstances that finally show to you what the real value of the oil leases was when he sold them. Not what the actual value was, but what he got for it."

In addition to being confusing, the instruction assumes that because there was one oil well on the premises in question, and seventeen on the several tracts covered by the leases transferred, the value of plaintiff's lease would necessarily be one-seventeenth of the value of all the oil leases. We fail to find in the record any evidence to show that the plaintiff's lease was an average producer, nor do we think there was sufficient evidence showing the production of the other wells sold, which, moreover, could only be arrived at by proof show-

Moherman v. Anthony.

ing how long they had been pumped and how the production was maintained. The fact is, the plaintiff failed to show what damages she sustained. When she was unable to show the actual consideration, she should have established by proof the reasonable value of her lease at the time defendant sold. This was neither alleged in the petition, nor shown by competent evidence. It is conceded there were two dry holes drilled on her lease and one producing well, and the evidence as to the amount this well produced or would produce was conflicting. Giving the plaintiff the benefit of all reasonable inferences that might be drawn from the evidence she offered upon this question, the most that can be said is that there was sufficient evidence to show that it would produce from three to five barrels a day.

In determining the value of an oil and gas lease there are many things which must be taken into consideration, including the number of dry holes drilled and the number of producing wells; their location with reference to the whole tract embraced in the particular lease; the proximity of the land to other proven territory. And to arrive at anything like a basis for a comparison as to the relative value of one lease with another, or with several others located on different tracts of land, would be extremely difficult.

It is urged by the plaintiff that the doctrine of confusion of goods applies, and that because the defendant has mingled property in which the plaintiff was interested with his own, the court's instructions were fair and proper. There is no confusion here of goods. The separate identity of the property covered by the plaintiff's lease has not been destroyed or lost.

"Where the goods mingled are of a kind which may be identified readily the doctrine of forfeiture by confusion has no application, for the obvious reason that the very foundation for the application of the rule is wanting, that is, the confusion of goods or the inability to identify them; and this is true even where the commingling was done with a fraudulent intent." (12 C. J. 494.)

Conceding that a situation somewhat analogous to that of confusion of goods is presented, this does not cure the instructions. The general rule where there has been confusion of goods is that if the party wronged elects not to recover possession of the identical property, he may bring an action for

his proportionate share, "or the value thereof." (12 C. J. 498.) The plaintiff sues for a proportionate share of the consideration, but fails to show what that was. In the absence of any testimony to show what share of the $65,000 was received as consideration for the transfer of her lease, the plaintiff can lose nothing if she recover damages based upon the value of her lease. And this cannot be arrived at by considering the well on her lease of equal value to each of sixteen others located in different territory, even if there had been no other property included in the sale. There ought to be little difficulty in establishing by competent evidence the value of plaintiff's lease at the time it was transferred.

In 12 C. J. 499, it is said:

"Where the party whose goods have been confused elects to sue for damages in their stead, or where the confusion or disposition of the goods is such that their specific recovery would be impossible, the amount awarded him will be the utmost that the value of the goods will permit."

The defendant raises the contention that the plaintiff cannot recover at all, because the land reverted to her by reason of a clause in the lease, which reads:

"If second well drilled within six months of first drilling on lease should not be producing well, lease reverts to first party."

The evidence shows that the second well was drilled within six months of first drilling, and that it was not a producing well. It is conceded, however, that defendant afterwards drilled the third well, and evidently the parties construed the lease as still in existence. The defendant is not in a position to claim that the lease reverted and that he had no interest in it, since he sold and transferred it long afterwards.

As the case must be sent back for another trial, it should be said that before the plaintiff can recover the yearly bonus for the oil well on her premises, she must establish that its production was five or more barrels per day on the average. Moreover, the proof does not show when the well was brought in, and whether it would have produced the required amount covering the period from the time it was brought in until the sale to Renker.

The judgment is reversed and the cause remanded for another trial.